# IN THE COURT OF APPEALS OF IOWA

No. 17-0221
Filed May 17, 2017

**IN THE INTEREST OF S.B., A.B., Z.B., A.B., and D.B.,**
**Minor Children,**

**J.S., Mother,**
　　Appellant,

**M.B., Father,**
　　Appellant.
_____

Appeal from the Iowa District Court for Cass County, Amy Zacharias, District Associate Judge.

The mother and father of five children separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Karen K. Emerson Peters of Karen K. Emerson Peters Law Office, Atlantic, for appellant mother.

Justin R. Wyatt of Woods & Wyatt, P.L.L.C., Glenwood, for appellant father.

Thomas J. Miller, Attorney General, and Mary K. Wickman, Assistant Attorney General, for appellee State.

Karen L. Mailander of Mailander Law Office, Anita, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

This child-welfare appeal involves five siblings, now ranging in age from seven to twelve years. They were removed from the care of their parents, Josie and Matthew, in August 2015 because the parents were using methamphetamine and the family was homeless. The juvenile court terminated parental rights in February 2017. In challenging the termination ruling, both parents raise the same three claims: (1) the State offered insufficient evidence the children could not be returned to their care, (2) the State failed to make reasonable efforts to facilitate reunification, and (3) termination was not in the best interests of the children.

After reviewing the record, we reach the same conclusions as the juvenile court.[1] The parents struggle with substance-abuse and mental-health diagnoses that they have not adequately addressed while their children have been out of their care. According to an experienced social worker assigned to the case, the parents have made only minimal progress toward stability over the course of the case. We find clear and convincing evidence supports terminating the rights of both parents; the Iowa Department of Human Services (DHS) has made reasonable efforts to reunify the family, but the parents have been inconsistent with visitation. The best interests of these school-aged children will be served by moving toward adoption. Accordingly, we affirm the termination order.

---

[1] We review termination-of-parental-rights proceedings de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the factual findings of the juvenile court, but we give them weight. *See id.* Proof must be clear and convincing. *Id.* Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* (alteration in original) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## I.   Statutory Grounds for Termination

The juvenile court terminated Matthew's parental rights under Iowa Code section 232.116(1)(f) and (*l*) (2016).  When the juvenile court relies on more than one statutory ground, we may affirm the order on any ground supported by clear and convincing evidence.  *See D.W.*, 791 N.W.2d at 707.  In his petition on appeal, Matthew challenges only paragraph (f).  Matthew's failure to advance an argument concerning subsection (*l*) waives any claim of error related to that ground.  *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").  Therefore, we affirm the termination of his parental rights under paragraph (*l*).[2]

The juvenile court terminated Josie's parental rights under section 232.116(1)(f).  To terminate under that section, the court must find all of the following have occurred:

> (1) The child is four years of age or older.

---

[2] To terminate under this subsection, the court must find all of the following have occurred:
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

Iowa Code § 232.116(1)(*l*).  The juvenile court appropriately determined that Matthew's diagnoses of a severe cannabis-use disorder and a severe amphetamine-type substance-abuse disorder presented a danger, as evidenced by the family's prior homelessness, and that Matthew's lack of progress in treatment provided clear and convincing evidence his prognosis indicated the children could not be returned to his care in the foreseeable future.

> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

Josie challenges only the fourth element, whether the State presented clear and convincing evidence her five children could not be returned to her custody "at the present time." We have interpreted that phrase as referring to the time of the termination hearing. *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). In her petition on appeal, Josie asserts she has been "clean and sober for [ten] months" and is living in a suitable home with her sister's family. Josie also contends she "was in the process of obtaining mental health treatment."

While these developments are positive, they did not convince the juvenile court that Josie had achieved sufficient stability to resume care of her five children. The juvenile court highlighted Josie's inconsistency in visits with the children and her failure to follow through with substance-abuse or mental-health treatment.[3] We share the juvenile court's concerns. *See D.W.*, 791 N.W.2d at 707 (finding child could not be returned to mother within statutory timelines in chapter 232 despite marginal improvement of her parenting after services were provided).

---

[3] Josie testified to having mental-health diagnoses of manic bipolar depression and attention-deficit/hyperactivity disorder. She also acknowledged having a drug relapse in February 2016.

The children are living with their grandparents in Atlantic, Iowa. Josie was staying in Omaha and did not make an effort to move closer to the children until more than one year after their removal. When she did relocate, she did so in violation of her pretrial-release provisions in Nebraska, resulting in her short-term incarceration. Josie claims she "was penalized for residing in Nebraska" when she "really had no choice." We disagree with that characterization. Josie's own decisions have limited her interaction with the children. She has not taken the necessary steps to treat her mental health or to guard against a potential relapse of her addiction. Neither the DHS case worker nor the guardian ad litem were able to recommend reunification. *See A.M.*, 843 N.W.2d at 111. On this record, we find clear and convincing evidence to justify termination.

As an alternative, Josie asks for three to six months of additional time to continue her substance abuse and mental health treatment in Atlantic. *See* Iowa Code § 232.104(2)(b) (requiring court to enumerate expected changes that will eliminate the need for removal when entering an order continuing placement). The juvenile court had already approved a three-month delay in permanency—from October 2016 to January 2017—to see if Josie could build on her progress. During that extension, Josie violated her pretrial release and ended up in jail. She also missed a scheduled pre-Christmas visit with the children. As the juvenile court observed, Josie did not take advantage of the additional time granted.[4]

---

[4] Matthew also includes an alternative request "that he be given an additional three to six months to reunify with the children." We cannot foresee that such a delay would result in the ability to safely reunify Matthew with the five children.

Judging from her past performance, we lack confidence Josie can make the behavioral changes necessary to allow for a safe reunification with her five children in the near future. Accordingly, we deny her request to delay permanency. *See In re A.A.G.*, 708 N.W.2d 85, 93 (Iowa Ct. App. 2005) ("Because the children had already been out of the home for over twelve months at the time of the permanency hearing, we view the proceedings with a sense of urgency.").

## II.     Reasonable Efforts

Under Iowa Code section 232.102(7), the DHS is required to "make every reasonable effort" to return children to their home "as quickly as possible" consistent with their best interests. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (citation omitted). The duty to make reasonable efforts toward reunification is not "a strict substantive requirement of termination. Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *Id.*

In his petition on appeal, Matthew focuses his reasonable-efforts argument on transportation assistance, alleging: "Had better transportation services been offered by the DHS to assist with treatment and visitation, Matthew would have had a much better chance at success."[5] In response, the State acknowledges transportation was an ongoing issue throughout the case but points out services offered by the DHS, such as transportation from Boys Town staff and gasoline vouchers. Given these measures and Matthew's own decision

---

[5] Matthew acknowledged at the termination hearing that he waited more than a year to set up substance-abuse treatment.

to reside in Omaha, we find the DHS made reasonable efforts toward reunification in this case.

Josie also includes an issue heading that mentions reasonable efforts, but the text of her argument merely repeats the allegations concerning the statutory ground for termination. She does not identify what services were lacking. Accordingly, we can grant her no relief on this issue. *See State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010) (noting conclusory statement without argument is insufficient to raise issue for appeal).

### III.    Best Interests of the Children

Both Matthew and Josie argue termination of their parental rights was not in the best interests of their children. The best-interest standard is found at Iowa Code section 232.116(2), giving primary consideration to the children's safety and to the best placement to further their long-term nurturing and growth, as well as their physical, mental, and emotional needs. "A best-interest standard inconsistent with the express terms of section 232.116(2) vitiates compliance with chapter 232's statutory framework." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The juvenile court applied the appropriate standard in concluding the children were in "desperate need of permanency" and "must have parents who are able to care for them on a full-time basis."

In their best-interests arguments, Matthew and Josie both discuss the fact their five children are now school-aged and more aware of their situation than infants or toddlers. Josie alleges they have a bond with her and that she "successfully parented" them for many years until her drug addiction "took

control." Matthew alleges the children are old enough to "self-protect to various degrees" and all have a bond with him.

Parental bonds come into play under section 232.116(3)(c). Under that provision, the juvenile court need not terminate parental rights if it finds "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We agree the record shows an existing bond between the children and their parents, but the parents' inconsistency in visitation and failure to attend to their children's emotional needs has distorted their relationship with the children. The case worker testified: "I believe the children become more and more frustrated, especially between visits. What I noticed is the children provide the emotional support to their parents because their parents do a lot of lamenting about their situation. So I think this has been very hard on the children." The case worker opined it was in the children's best interest to proceed with the termination and continue toward possible adoption by their grandparents, who are "mature and responsible" caregivers and provide the children with a "set routine" and "appropriate expectations." In their grandparents' home, the children "are allowed to and are encouraged to have activities. They can be kids and they don't have to worry about adult issues." We are persuaded by this testimony and conclude termination was in the children's best interests.

**AFFIRMED ON BOTH APPEALS**